**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0613-22

LIBERTY STORAGE, LLC,

    Plaintiff-Appellant,

v.

CITY OF JERSEY CITY
PLANNING BOARD and
TFJ JERSEY CITY, LLC,

    Defendants-Respondents.

_____

Argued January 8, 2024 – Decided November 4, 2024

Before Judges DeAlmeida, Berdote Byrne, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3126-21.

Martin R. Kafafian argued the cause for appellant (Beattie Padovano, LLC, attorneys; Ira E. Weiner, on the briefs).

Santo T. Alampi argued the cause for respondent City of Jersey City Planning Board (Law Office of Santo T. Alampi, LLC, attorneys; Santo T. Alampi, on the brief).

Lisa A. John-Basta argued the cause for respondent TFJ Jersey City LLC (Chiesa Shahinian & Giantomasi PC, attorneys; Lisa A. John-Basta, David M. Dugan and Mallik Yamusah, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Plaintiff Liberty Storage, LLC appeals from the September 28, 2022 order of the Law Division dismissing with prejudice its complaint in lieu of prerogative writs challenging defendant City of Jersey City Planning Board's (Board) approval of defendant TFJ Jersey City, LLC's (TFJ) preliminary and final major site plans and variance relief for the development of a self-storage facility. We affirm.

I.

TFJ filed its application with the Board in February 2021. The property is in an area designated as in need of redevelopment (the Redevelopment Area) and governed by the development regulations set forth in the Liberty Harbor Redevelopment Plan (the Redevelopment Plan), which supersedes the Jersey City Zoning Code with respect to most development regulations for the site. The parcel is in a remote southeastern area of the municipality far from the city center and is bound by the New Jersey Turnpike, disused rail tracks, and various

2

warehouses and industrial uses.  There is undeveloped parkland to the north of the site.

A 90,000-square-foot, roughly two-acre lot, the parcel is exceptionally long and narrow at roughly 900 feet long and 105 feet deep.  The property is entirely impervious coverage, occupied by several buildings, and presently used for parking and storage of construction vehicles and materials.  It is the only developable parcel on the northern side of Thomas McGovern Drive and is non-conforming with respect to the impervious coverage, setback, parking setback, landscaping, and lighting requirements of the Redevelopment Plan.

The Redevelopment Plan sets forth several objectives for redevelopment of the area in which the property is located, including: (1) the elimination of substandard buildings and other deteriorated and obsolete structures; (2) improvement of the functional and physical layout of the area for contemplated new development; and (3) creation of new employment opportunities in a modern industrial park, including provisions for new manufacturing, warehousing, distribution, office, and recreational activities.  The property is in the industrial district of the Redevelopment Plan, where self-storage facilities are permitted uses.

3

TFJ submitted detailed plans in support of its proposed development (the Project), which consists of a six-story building, the first floor of which would contain a facility office and ninety-nine understory parking spaces. The remaining stories would be comprised of self-storage units. Additional surface parking lots are proposed on either side of the building, with eighteen parking spaces, including four handicap-accessible spaces, on the west side of the building, and eleven parking spaces on the east side of the building. Six of the loading docks will face Thomas McGovern Drive, a dead-end street. This arrangement will require customers to back up on the public street and cross the sidewalk to access those loading docks.

TFJ sought several variances, only one of which is before this court. It requested a variance from the requirement that the proposed building be setback at least ten feet from the surface parking lot. TFJ requested approval of a five-foot setback from surface parking on the west side of the building, where four handicap-accessible parking spaces, one of which is a handicap-accessible van parking space, will be located. Only one of the handicap-accessible parking spaces, which is adjacent to a ramp to the office, would be less than ten feet from the building. Between that parking space and the building is a concrete walkway with a cantilever canopy overhead. TFJ's engineering expert testified

4

the deviation was necessitated by the unique and narrow shape of the lot and the need to place handicap-accessible parking spaces close to the office.

TFJ's development plans were reviewed by the Board's professional engineer and planners. The Board's engineer requested additional information or modifications. At no time, however, did she raise concerns with respect to any aspect of the Project at issue in this appeal, including loading and unloading activities along Thomas McGovern Drive, traffic circulation at the site, or unsafe conditions related to the parking setback variance.

The Board's planners summarized their review of the application in a report to the Board that offered a favorable opinion on the variances TFJ requested. The planners noted

> the proposed arrangement of parking and internal traffic flow is responding to the irregular shape and constrained lot depth of the site and . . . the proposal has responded to the existing geometry of the site in the most efficient way, with emphasis on preserving operations and traffic flow within the larger neighborhood by accommodating loading operations onsite and internally in the structure.

The report recommended conditions to mitigate the negative statutory criteria, including prohibiting trucks beyond forty-feet long from using the loading docks facing Thomas McGovern Drive and prohibiting loading operations from blocking the sidewalks or jeopardizing the safety of pedestrians along the

A-0613-22

roadway. Trucks forty-feet long and shorter would be entirely on site, and not blocking the sidewalk or roadway, once backed up to a loading dock facing the roadway. Those loading docks would be tucked into the building to fit trucks of that length.

The Board held a hearing on TFJ's application. It heard testimony from TFJ's engineering expert, architect, and professional planner. The engineer opined the Project fits the unique geometry of the site and would either bring the property into conformance with development regulations or substantially reduce exiting nonconformities. He noted the Project included installation of hundreds of trees and shrubs around the perimeter of the site and parking areas, the installation of street trees along Thomas McGovern Drive, compliance with the city's green area ratio, and reduction of the impervious area coverage from 100 percent to approximately seventy-five percent.

The engineer testified that no truck larger than forty feet would access the loading docks facing Thomas McGovern Drive because the largest truck a customer could typically rent is thirty-four to thirty-six-feet long. The engineer noted TFJ agreed to place signage at those docks directing customers not to block the pedestrian travel way – a condition the Board memorialized in its resolution of approval. Loading and unloading from passenger vehicles and

smaller trucks would take place in the surface parking lot or underneath the building.

With respect to the handicap-accessible parking space variance, the expert noted all but one of the handicap-accessible parking spaces were compliant with the ten-foot setback and it was necessary to put that one space closer to the building to accommodate the expanded size of the handicap-accessible van space and the striping to create an accessible aisle to get to the building. TFJ's planner testified the five-foot setback for the single space was a de minimis deviation and would result in no substantial detriment.

One of the Board's professional planners testified TFJ had agreed on the record to all of the conditions proposed by the Board's staff. He also stated the Project is a permitted use consistent with the industrial and commercial nature of the area and the city's master plan. He agreed the Project met the statutory positive and negative criteria for the requested variances.

After taking testimony, the Board opened the meeting for public comment. No member of the public asked questions of TFJ's experts or commented on the application. Plaintiff did not participate in the hearing.

On June 22, 2021, the Board adopted a resolution approving the application with several conditions. The Board found the testimony of TFJ's

A-0613-22

experts at the hearing, which was affirmed by the Board's professional planner, to be credible. It also found TFJ had established an entitlement to the parking setback variance under the hardship criteria established in N.J.S.A. 40:55D-70 (c)(1)(a) and (c) due to the unique shape of the parcel and location of existing improvements and utilities on site. In addition, the Board found that TFJ was entitled to the variance under the criteria established in N.J.S.A. 40:55D-70(c)(2) because the purposes of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, would be advanced by the variance and the benefits of such deviation would substantially outweigh any detriment.

The Board also found the Project would eliminate a non-conforming use, as well as the non-conforming impervious coverage and building setback, and that the proposed use is in conformity with the Redevelopment Plan as well as the city's Master Plan. With respect to the use of the loading docks facing Thomas McGovern Drive, the Board noted TFJ's agreement to limit the length of trucks that may use those docks and to post appropriate signs, and found the majority of loading and unloading would take place in the underfloor space on the first floor of the building and surface parking spaces. The Board found the Project would enhance the neighborhood, rather than result in any detriment to surrounding properties. Thus, the Board concluded, the variance could be

8

granted without substantial detriment to the public good and without impairing the intent or purpose of the Redevelopment Plan. N.J.S.A. 40:55D-70(d).

Plaintiff, which owns and operates a competing self-storage business in the vicinity of the property, filed a complaint in lieu of prerogative writs in the Law Division challenging the Board's resolution. It alleged: (1) the Board's approval of the Project was not based on sufficient credible evidence and was arbitrary, capricious, and unreasonable; and (2) the Board's approval of the parking setback variance was not supported by the record. At a subsequent hearing, plaintiff argued: (3) the Board's approval was invalid because TFJ's customers would violate the Motor Vehicle Code when they back up trucks on Thomas McGovern Drive and maneuver over the public sidewalk to access the loading docks facing the roadway, blocking the flow of traffic and endangering pedestrians; and (4) the public notice for the Board's hearing was deficient because it did not state the Project's operation would use the public right of way, i.e., the roadway and sidewalk.

On July 14, 2022, the trial court issued an oral opinion dismissing the complaint. With regard to the notice, the court found

> the generalized notice that was provided advising the people that clearly we are putting a self-storage facility there, you have to get on and off the property from Thomas McGovern Drive, you could look at the plans.

A-0613-22

> If you have more questions about that, you could show up at the hearing.
>
> It certainly would have alerted people to the need to evaluate the vehicles, how they would get on and off the property.

The court concluded a notice describing in detail the maneuvers trucks of a certain length would make to access the loading docks facing the roadway was not necessary to provide adequate notice of what would be considered at the hearing.

The court rejected the remainder of plaintiff's arguments, apart from its challenge to a variance issued to TFJ regarding proposed signs at the facility. The court remanded the matter for further proceedings on that point only.

A July 18, 2022 order dismissed the complaint as to all counts except the signs variance.[1] On remand, TFJ withdrew its request for a variance with respect to the signs.

On September 28, 2022, following the remand, the court entered an order dismissing the complaint with prejudice.

This appeal followed. Plaintiff argues the Board's decision should be reversed because: (1) the Project's design requires customers to block traffic in

---

[1] On August 1, 2022, the court issued a revised order correcting the caption on the July 18, 2022 order.

violation of the Motor Vehicle Code when they maneuver trucks to access the loading docks facing the roadway; (2) the grant of the parking space setback variance is not supported by substantial, credible evidence in the record; and (3) the public notice for the hearing was deficient because it did not state that the Project's operation would use the public right of way.

## II.

When reviewing a planning board's decision, we use the same standard used by the trial court. Cohen v. Bd. of Adjustment, 396 N.J. Super. 608, 614-15 (App. Div. 2007). Like the trial court, our review is limited. Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998). Decisions of zoning boards are quasi-judicial actions of municipal administrative agencies, Willoughby v. Planning Bd., 306 N.J. Super. 266, 273 (App. Div. 1997), and they are presumed to be valid, Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002). The Board's decision may be set aside only if it was arbitrary, capricious, or unreasonable. Medici v. BPR Co., 107 N.J. 1, 15 (1987).

A planning board's actions are presumed to be valid because of its "peculiar knowledge of local conditions," which entitle such boards to wide latitude in the exercise of discretion. N.Y. SMSA, LP v. Bd. of Adjustment, 370

11

N.J. Super. 319, 331 (App. Div. 2004) (quoting Pierce Ests. Corp. v. Bridgewater Twp. Zoning Bd. of Adjustment, 303 N.J. Super. 507, 514 (App. Div. 1997)). Further, "the Board 'has the choice of accepting or rejecting the testimony of witnesses. Where reasonably made, such choice is conclusive on appeal.'" Kramer v. Bd. of Adjustment, 45 N.J. 268, 288 (1965) (quoting Reinauer Realty Corp. v. Nucera, 59 N.J. Super. 189, 201 (App. Div. 1960)). "The proper scope of judicial review is not to suggest a decision that may be better than the one made by the board, but to determine whether the board could reasonably have reached its decision on the record." Jock v. Zoning Bd. of Adjustment, 184 N.J. 562, 597 (2005).

A. Notice.

The MLUL mandates that the public receive several forms of notice at least ten days before a board hears "applications for development," including variance applications. N.J.S.A. 40:55D-3; N.J.S.A. 40:55D-12(a). The public notice for a variance application must include: (1) "the date, time and place of the hearing," (2) "the nature of the matters to be considered," (3) "an identification of the property proposed for development by street address, if any, or by reference to lot and block numbers as shown on the current tax" records, and (4) "the location and times at which" any supporting documents for approval

12

are available for review. N.J.S.A. 40:55D-11. "Failure to provide proper notice deprives a municipal planning board of jurisdiction and renders null any subsequent action." Shakoor Supermarkets, Inc. v. Old Bridge Twp. Plan. Bd., 420 N.J. Super. 193, 201 (App. Div. 2011).

It is clear "the MLUL's mandate in N.J.S.A. 40:55D-11 requir[es] notice of the 'nature of the matters to be considered' by the board." Pond Run Watershed Ass'n v. Twp. of Hamilton Zoning Bd. of Adjustment, 397 N.J. Super. 335, 351 (App. Div. 2008) (quoting Perlmart of Lacey, Inc. v. Lacey Twp. Plan. Bd., 295 N.J. Super. 234, 241 (App. Div. 1996)). The notice shall "accurately identify[] the type of use or activity proposed by the . . . applicant in laymen's terms" with the purpose of fairly apprising of the plan to allow the public to determine whether to participate at the public hearing. Id. at 352 (quoting Perlmart, 295 N.J. Super. at 239). We have "read the statute to require a 'common sense description of the nature of the application, such that the ordinary layperson could understand its potential impact upon him or her.'" Ibid. (quoting Perlmart, 295 N.J. Super. at 239).

We see no merit in plaintiff's argument that the notice should have stated the Project proposed using the public right of way for operation of the self-storage facility. No loading and unloading activities will take place in the public

right of way. No portion of the building will be located in the public right of way. The passage of customer vehicles over the public roadway and sidewalk to access the facility does not constitute encroachment on the public right of way. Such passage is necessary in virtually every business open to the public.

The notice provided the public with the information required by statute. They were put on notice that TFJ was proposing the development of the property as a self-storage facility. It would be readily apparent to members of the public that customers would need to use the roadway and cross the sidewalk to enter the facility and to back up to the loading docks facing Thomas McGovern Drive. They were notified of their opportunity to comment on those aspects of the operation of the proposed facility at the hearing.

B.    Parking Setback Variance.

The parking setback variance granted to TFJ is a bulk variance. "Provisions in a zoning ordinance that control the size and shape of a lot and the size and location of buildings or other structures on a parcel of property are known as bulk or dimensional requirements." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 28 (2013). N.J.S.A. 40:55D-70(c)(1) authorizes boards to grant a variance from bulk requirements as follows:

> Where: (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or

> (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation . . . would result in peculiar and exceptional practical difficulties to, or an exceptional and undue hardship upon, the developer of such property . . . .
>
> [N.J.S.A. 40:55D-70(c)(1).]

The hardship claimed must relate to a condition of or on the property in question and the property itself must be in some way atypical. <u>Lang v. Zoning Bd. of Adjustment</u>, 160 N.J. 41, 56 (1999). The variance must "relieve such difficulties or hardship . . . ." N.J.S.A. 40:55D-70(c)(1)(c).

In addition, a variance may be granted

> where in an application . . . relating to a specific piece of property the purposes of this act . . . would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment . . . .
>
> [N.J.S.A. 40:55D-70(c)(2).]

Under either provision of the statute, "[n]o variance . . . may be granted . . . without a showing that such variance . . . can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70(d).

The hardship in the absence of a variance is referred to as the "positive criteria." Cohen, 396 N.J. Super. at 615. The absence of a substantial detriment to the public good and zone plan impairment are often referred to as the "negative criteria." Salt & Light Co., Inc. v. Willingboro Twp. Zoning Bd. of Adjustment, 423 N.J. Super. 282, 287 (App. Div. 2011). Demonstrating that a variance can be granted without substantial detriment to the public good "focuses on the effect that granting the variance would have on the surrounding properties." Price v. Himeji, LLC, 214 N.J. 263, 286 (2013).

The record supports the Board's determination that TFJ established entitlement to both a (c)(1) hardship variance and a (c)(2) variance for the setback of a single handicap-accessible parking space. The property is unusually narrow with a unique geometry. There are three points at which the building has adjacency to parking. The setback requirement is satisfied at two of the three points. Only one parking space requires a setback variance, resulting from the need to put a handicap-accessible space near the office, where a ramp and covered walkway provide access to the building. The variance also was necessitated by the larger size space needed for a handicap-accessible van and the stripping needed to create a safe walkway from the space to the office. The Board accepted as credible expert testimony that in light of the unusual shape of

16

the property, the Project's proposed parking arrangement and internal traffic flow are the most efficient way to preserve operations and traffic flow in accord with the neighborhood by accommodating loading operations onsite and internally in the structure. There is no identifiable detriment arising from the setback variance and the overall benefit to the surrounding properties from the largely conforming development of the now non-conforming property is substantial.

     C.    <u>Violation of the Motor Vehicle Code.</u>

Plaintiff argues approval of the Project was invalid because the use of the property will result in the violation of two provisions of the Motor Vehicle Code, N.J.S.A. 39:4-56 ("No person shall drive or conduct a vehicle . . . as to be likely to cause delay in traffic or accident to man, beast or property.") and N.J.S.A. 39:4-67 ("No vehicle . . . shall be permitted by the owner or driver thereof to so occupy a street as to interfere with or interrupt the passage of other . . . vehicles . . . ."). Plaintiff bases its argument on TFJ's acknowledgment some of its customers will back up their vehicles on Thomas McGovern Drive and cross the sidewalk to access the loading docks facing the roadway.

Plaintiff argues that most of TFJ's customers will not be professional truck drivers and will be operating rented trucks and speculates they will be unlikely

to back up to the loading docks in a single maneuver, further delaying traffic. Plaintiff also argues that customers will have to approach the property in a westerly direction and TFJ's application presented evidence only of the maneuvering necessary to back up to the loading docks for vehicles traveling in an easterly direction, which undermines the Board's findings.

In addition, plaintiff notes that TFJ's plans included a photograph and information regarding a thirty-foot truck backing up to the loading docks, while TFJ's expert conceded that trucks as long as thirty-six feet will be used by customers at the property. Plaintiff speculates that a thirty-six-foot truck necessarily will leave the roadway when maneuvering into the loading docks.

We have carefully reviewed the record and find no basis on which to reverse the Board's decision based on the expected maneuvering of trucks to access the loading docks facing Thomas McGovern Drive. We note plaintiff, having not appeared at the Board hearing, raised this argument for the first time in the Law Division. As a result, many of its arguments, such as its speculation that thirty-six-foot trucks would necessarily leave the roadway when backing up to the docks, are not based on evidence submitted to the Board. In addition, plaintiff's arguments with respect to traffic circulation must be viewed in the context of the neighborhood in which the Project is located. It is undisputed

Thomas McGovern Drive is a two-lane, dead-end road in an area of industrial uses and warehouses. The property is not located on a heavily travelled roadway. Nor is the property in an area of high pedestrian foot traffic. There is no evidence that crossing the roadway to access the loading docks – where the trucks will be loaded and unloaded completely off the roadway – will result in a meaningful delay in vehicular traffic on Thomas McGovern Drive or otherwise cause unsafe conditions.

To the extent we have not specifically addressed any of plaintiff's remaining contentions, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19